UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JANET L.K.,

                      Plaintiff,

v.                                                   1:20-CV-0725
                                                   (GTS)

ANDREW M. SAUL, Commissioner of the
Social Security Administration,

                      Defendant.
_____

APPEARANCES:                                         OF COUNSEL:

OLINSKY LAW GROUP                        HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, NY 13202

SOCIAL SECURITY ADMINISTRATION       PAUL NITZE, ESQ.
OFFICE OF GENERAL COUNSEL–REGION I   Special Assistant U.S. Attorney
  Counsel for Defendant
JFK Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

GLENN T. SUDDABY, Chief United States District Judge

# DECISION and ORDER

Currently before the Court, in this action filed by Janet L.K. ("Plaintiff") against the Commissioner of Social Security Andrew Saul ("Defendant") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are (1) Plaintiff's motion for judgment on the pleadings, and (2) Defendant's motion for judgment on the pleadings. (Dkt. Nos. 10, 13.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for judgment on the pleadings is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1973, making her 43 years old at her application filing date and 45 years old at the date of the ALJ's decision. (T. 30.)[2] In her application, Plaintiff alleged that she is disabled due to small fiber peripheral neuropathy, sleep apnea, asthma, depression, anxiety disorder, back problems, stomach problems, and night terrors. (T. 191.)

B. **Procedural History**

Plaintiff applied for Supplemental Security Income on February 21, 2017. (T. 18.) This application was initially denied on July 17, 2017, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Plaintiff appeared at a hearing before ALJ Mary Sparks on January 9, 2019. (T. 18, 55.) On May 3, 2019, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 18-32.) On April 28, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (T. 2-4.)

C. **The ALJ's Decision**

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 18-32.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her application filing date. (T. 20.) Second, the ALJ found that Plaintiff's gastrointestinal disorders, small fiber neuropathy, obesity, carpal tunnel syndrome, mild multilevel degenerative changes of the thoracolumbar spine, mild obstructive sleep apnea, major depressive disorder, and generalized anxiety disorder are severe impairments, while her degeneration of the thoracic spine and asthma are not severe impairments. (T. 20-21.) Third, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the

---

[2] The Administrative Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"); specifically, the ALJ considered Listing 1.04, Listing 3.00, Listing 5.06, 11.14, 12.04, and 12.06. (T. 21-23.) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work as defined in 10 CFR 416.967(b) except that the claimant can do no more than frequent handling or fingering and could have no more than occasional exposure to fumes, odors, dust, gases and poorly ventilated areas and would be limited to performing simple repetitive jobs defined as those having no more than 1 to 2 tasks as defined by the United States Department of Labor employment and training administration in the revised handbook for analyzing jobs and they would need to be low stress jobs [defined] as those having no more than occasional decision-making required and no more than occasional changes in the work setting and the individual could have no more than occasional interaction with supervisors.

(T. 23.) Fifth, the ALJ found that Plaintiff was unable to perform her past work as an office helper and a janitor. (T. 30.) Sixth, the ALJ found that Plaintiff was able to perform other work in the national economy as a small products assembler, a housekeeper, and a plastic molding machine operator. (T. 31.) The ALJ therefore concluded that Plaintiff was not disabled during the relevant time period.

### D. The Parties' Briefing on Their Motions

#### 1. Plaintiff's Motion for Judgment on the Pleadings

Generally, in her motion, Plaintiff argues that the ALJ's RFC is not supported by substantial evidence. (Dkt. No. 10, at 12-16 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues the following three points: (1) the ALJ erred in failing to account for or to explain why he rejected portions of the opinions from the psychological consultative examiners that indicated a mild limitation in her ability to maintain a regular schedule and a mild-to-moderate difficulty in sustaining an ordinary routine, despite affording significant weight to the opinions of those two physicians; (2) the ALJ erred in failing to include limitations in the RFC related to Plaintiff's

3

gastrointestinal disorders despite finding them to be severe impairments and despite the significant evidence of Plaintiff's repeated hospitalizations for these conditions; and (3) the ALJ's errors are harmful and require remand because the vocational expert testified that Plaintiff would be disabled if she were off-task more than ten percent of the workday or absent more than once per month, and both her limited abilities to maintain a regular schedule/sustain an ordinary routine and her need to use the bathroom in excess of standard work breaks would impact her ability to remain on task and maintain appropriate attendance. (*Id.*)

## 2. Defendant's Motion for Judgment on the Pleadings

Generally, in his motion, Defendant makes two arguments in response to Plaintiff's assertions of error. (Dkt. No. 13, at 5-16 [Def.'s Mem. of Law].) First, Defendant argues that the ALJ did not commit any error related to the consultative examiners' opinions. (*Id.* at 5-11) Specifically, Defendant argues that (a) the highlighted limitations were accounted for in the RFC limitation to unskilled work in a low-stress environment with occasional interaction with supervisors and thus there is no conflict to resolve, (b) mild and mild-to-moderate limitations such as those highlighted by Plaintiff do not prevent unskilled work, (c) the ALJ is permitted to adopt less than the entirety of a source's opinion and she explicitly did not accept the totality of the consultative examiners' opinions, and (d) Plaintiff has not adduced any evidence to support the inclusion of any additional specific limitations related to attendance. (*Id.*)

Second, Defendant argues that the ALJ properly accounted for Plaintiff's gastrointestinal symptoms based on the evidence. (*Id.* at 11-16.) Specifically, Defendant argues that (a) the ALJ provided a thorough discussion of her gastrointestinal disorders and the treatment thereof, none of which suggests greater limitations, (b) no physician has opined any additional limitations related to her gastrointestinal disorders, including any need for a certain frequency of bathroom

use during the workday and the record does not support the need for frequent trips to the bathroom on a consistent basis, and (c) the ALJ explicitly found that Plaintiff's reports of symptoms were not entirely credible and Plaintiff has not challenged that finding. (*Id.*)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant

> bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III.  ANALYSIS

After carefully considering whether the ALJ's decision is supported by substantial evidence and consistent with applicable legal standards, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

As to Plaintiff's argument regarding the ALJ's alleged failure to explain why he declined to incorporate certain limitations opined by the consultative examiners into the RFC despite affording those opinions significant weight, the Court finds this argument unavailing for four reasons.

First, as Defendant argues, the ALJ explicitly indicated that she was not adopting all of the limitations opined by these physicians, and thus any failure to include certain specific limitations in the RFC does not represent an inconsistency between the ALJ's finding and the RFC. (T. 28 [affording significant weight to the opinions of Dr. Stramenga and Dr. Hartman because their opinions did not substantiate the presence of a disabling mental disorder, but noting that her RFC included "some aspects" of their opinions, "in terms of dealing with simple tasks, social interaction, and decision-making process"].) Thus, the ALJ made it clear that she did not necessarily adopt every limitation these sources opined. The ALJ need not adopt opinions in their entirety, but may instead adopt only those portions that she finds to be consistent with the record as a whole. *See Crumedy v. Comm'r of Soc. Sec.*, 16-CV-1261, 2017

7

WL 4480184, at *5 (N.D.N.Y. Oct. 6, 2017) (Suddaby, C.J.) (noting that "there is no requirement that the ALJ accept every limitation in an opinion where portions of that opinion are not supported by the evidence"); *Brooks v. Comm'r of Soc. Sec.*, 16-CV-0531, 2017 WL 1655211, at *5 (N.D.N.Y. May 1, 2017) (Carter, M.J.) (noting that "an ALJ does not have to strictly adhere to the entirety of one medical source's opinion"); *Kitka v. Comm'r of Soc. Sec.*, 15-CV-0060, 2016 WL 825259, at *9 (N.D.N.Y. Feb. 9, 2016) (Baxter, M.J.) (indicating that [t]here is no requirement that the ALJ accept every limitation in the opinion of a consultative examiner"), report-recommendation adopted by 2016 WL 865301 (N.D.N.Y. Mar. 2, 2016) (Hurd, J.).

Second, the ALJ did not rely solely on the opinions of the consultative examiners when determining Plaintiff's RFC. The Court notes that the ALJ also afforded significant weight to and "adopted and adapted" limitations from the State Agency medical consultant's opinion into the RFC, who opined that, among other things, Plaintiff was "not significantly limited" in her abilities to perform within a schedule, maintain regular attendance, be punctual within customary tolerances, and sustain an ordinary routine without special supervision. (T. 29, 110-11.) The ALJ's reliance on this opinion suggests that her interpretation of the consultative examiners' opined mild limitation in maintaining a regular schedule and mild-to-moderate difficulty in sustaining an ordinary routine as being non-disabling is supported by substantial evidence. *See Tyler M. v. Saul*, 19-CV-0426, 2020 WL 5258344, at *8 (N.D.N.Y. Sept. 3, 2020) (Hummel, M.J.) (noting that "the RFC formulated by the ALJ need not 'perfectly correspond with any of the opinions of medical sources cited in his decision, [because an ALJ is] entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.'") (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 [2d Cir. 2013]).

Third, it is not apparent that the RFC fails to account for the highlighted limitations. The ALJ's RFC limitation to simple, repetitive, one-or-two-task, low stress jobs with no more than occasional decision-making and occasional changes in work setting, and no more than occasional interaction in the workplace with supervisors reasonably accounts for the opined mild limitation in maintaining a regular schedule and mild-to-moderate difficulty sustaining an ordinary routine. (T. 23.) *See Tamara M. v. Saul*, 19-CV-1138, 2021 WL 1198359, at *11 (N.D.N.Y. Mar. 30, 2021) (Hummel, M.J.) (finding that an RFC for only simple instructions and decisions not performed at a production rate was sufficient to incorporate mild-to-moderate limitations in staying on task or maintaining appropriate levels of attendance); *Lowry v. Comm'r of Soc. Sec.*, 15-CV-1553, 2017 WL 1290685, at *5 (N.D.N.Y. Mar. 16, 2017) (Carter, M.J.) (finding that an RFC limitation to simple, routine work accounted for the physician's opinion that the plaintiff may have a moderate limitation in his ability to maintain a schedule), report-recommendation adopted by 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017) (Suddaby, C.J.); *Landers v. Colvin*, 14-CV-1090, 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29, 2016) ("The determination that Plaintiff is limited to 'simple, repetitive, and routine tasks' accounts for Plaintiff's [moderate] limitations as to maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance."). Of note, Plaintiff has not pointed to any evidence that would suggest any specific additional functional restrictions related to sustaining a routine and attendance are warranted as a result of her mental impairments

Fourth, even if the Court were to accept Plaintiff's argument that the ALJ rejected the highlighted limitations and such unexplained rejection was error (which it does not), such error would nonetheless be harmless here. Plaintiff fails to provide any evidence or legal precedent to support her argument that a mild or even a mild-to-moderate limitation are suggestive of

9

limitations that would cause Plaintiff to be absent at least one day per month, or would otherwise be disabling.  *See Bradley W. v. Comm'r of Soc. Sec.*, 19-CV-1217, 2020 WL 5848833, at *12 (N.D.N.Y. Oct. 1, 2020) (Baxter, M.J.) ("Even if the ALJ erred in failing to adopt both providers' 'moderate' limitations in plaintiff's ability to maintain a schedule, a 'moderate' restriction is still consistent with the ability to perform substantial gainful activity, and would at most, be harmless error."); *Melisa G. v. Berryhill*, 18-CV-0508, 2019 WL 2502726, at *5 (N.D.N.Y. June 17, 2019) (Stewart, M.J.) (noting that "moderate limitations are not prohibitive of performing unskilled work"); *Lowry*, 2017 WL 1290685, at *4-5 (rejecting plaintiff's argument that a moderate limitation in ability to maintain a routine translated to an opinion that plaintiff would be off-task 20% of the workday or absent more than four days per month).

As to Plaintiff's second argument that the ALJ erred in failing to include limitations in the RFC to account for her gastrointestinal impairments despite finding those impairments to be severe is similarly unavailing.  Notably, in her decision, the ALJ discussed the medical evidence related to Plaintiff's gastrointestinal impairments, including her symptoms, her treatment, and her hospitalizations, but found that this evidence did not show that those impairments were disabling.  (T. 24.)  Unlike the case law on which Plaintiff relies for her argument, there is therefore no question that the ALJ considered Plaintiff's gastrointestinal impairments when assessing the RFC.

Additionally, as Defendant argues, no medical source has opined any additional limitations related to Plaintiff's gastrointestinal disorders.  Plaintiff herself does not suggest what specific limitation the ALJ should have included based on the record, but instead merely states that "[l]imitations were warranted based on Plaintiff's repeated hospitalization for gastrointestinal issues throughout the medical record."  (T.15-16.)  Although the record shows

that Plaintiff was hospitalized on multiple occasions related to abdominal pain, vomiting, diarrhea, and constipation, it also shows that treatment was helpful to reduce her symptoms on those occasions. (T. 569-71 [hospitalization on March 1, 2017]; 1160-1267 [hospitalization in August 2017].) Plaintiff does further argue that "a small number of ten-minute breaks would significantly impact her ability to maintain on task," but she acknowledges that "it is unclear how many bathroom breaks Plaintiff would need per day" based on the record. (*Id.*) Although the records certainly supports that Plaintiff has periods where she experiences diarrhea with frequent bowel movements, (T. 769 [reporting up to 12 bowel movements per day], 1078 [reporting on-and-off diarrhea for the past six months], 1174 [reporting diarrhea and loose stool for past two weeks], 1418 [reporting bowel movements more than ten time per day when she has diarrhea], 1536 [reporting having nine or ten bowel movements per day, but her normal is five or six]), it also shows that Plaintiff had periods where she experiences constipation with no bowel movements. (T. 1418 [reporting a pattern of approximately two weeks of diarrhea followed by a few weeks of constipation], 1442 [reporting constipation].) At the hearing, Plaintiff reported that she has to "use the restroom" between eight and ten times per day. (T. 62.) However, even such reported frequency does not necessarily suggest that Plaintiff's bathroom use during the workday could not be accommodated by typical work breaks, much less that it would impact her ability to remain on task in a way that would preclude her from the performance of all work. No medical or vocational source has opined that Plaintiff has any specific limitations related to bathroom frequency-of-use, or that any such limitation would indeed impact her ability to perform work in the national economy. Based on its review of the record as a whole, the Court finds that the ALJ's choice not to include any additional limitations related to Plaintiff's gastrointestinal impairments is supported by substantial evidence.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: June 24, 2021
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge